JOHN J. POWERS *vs.* EZEKIEL FOWLER.

Worcester.　October 6, 1892. — October 21, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Fraudulent Representations — Evidence.*

In an action for fraudulent representations alleged to have been made by the defendant in selling the plaintiff an interest in certain land described as being in K., the plaintiff testified that the defendant spoke to him about a tract of thirty-five acres of land in K. amounting to about $63,000, " to be put into a syndicate . . . of a thousand dollars a share "; that he had sold all but six shares, and asked the plaintiff to take two or three or more; and that he called at the plaintiff's house three times, and the plaintiff finally told him he would take one share if everything was " all straight and right," and he said that it was. It appeared that the plaintiff soon afterwards paid $1,000 and took a receipt for it from the defendant; that about six months later, a deed of trust was delivered to the

plaintiff by the defendant, which purported to give him one twenty-fourth interest in the real estate, subject to mortgages amounting to $38,000, and which recited an agreement on his part to assume and pay one twenty-fourth part of the mortgage indebtedness; and that subsequently an assessment was made for a payment towards the mortgage debt. The plaintiff, in describing an interview in regard to the assessment, testified as follows: " When he came in he spoke to me about sending the money on this assessment, and I told him I did n't propose to send it because there was a mortgage on it that he did not represent to me at the time he sold it to me. I told him I understood it was all clear, or at least he represented it so to me. He said the property was all right, just as he had represented. I told him if it was, to give me back my thousand dollars and I would ·give him the interest on it. He said he would if he had the money, because he considered it all right." In describing a later interview between the plaintiff and the defendant and A., a partner of the defendant in the real estate transaction, the plaintiff testified that he made a statement to them of what the defendant told him when he bought the share, the substance of which was as follows: " He came to my house and told me they had bought this land, thirty-five acres in K., at $63,000. . . . They had bought it at that price, and they said they had cut it up into shares at a thousand dollars a share; that they had sold all but six, and wanted I should buy one or more of them." It appeared in evidence that the real estate was about thirty-five acres, not situated in K., which was a large and populous city, but in I., nine miles from there; that it was bought for $35,000 by the firm of A., B., and C., of which the defendant was a member, and the title was taken by B., who gave $1,000 in cash, and mortgages to cover the remaining sum; that later the title was transferred through a third person from B. to A. for a consideration stated in the deed to be $62,456, A. having previously taken a mortgage on ,the property such as to make the mortgage indebtedness appear of record to be $38,456; that the firm raised money from the sale of certificates of trust issued by A., and with it paid off a small part of the mortgage indebtedness, and divided the balance of the proceeds among them; and that none of them ever put any money into the property except the $1,000 which was paid at the time of the purchase, and afterwards reimbursed from the proceeds of the sale of certificates of trust. The testimony of experts in real estate tended to show that the value of the property at that time was from $17,500 to $20,000; and that it was worth at the time of the trial not more than $9,000. *Held,* that there was evidence which should have been submitted to the jury.

TORT, in five counts, for fraudulent representations. The fifth count, which is the only one material to be stated, alleged, in substance, that on July 7, 1887, the defendant, in order to induce the plaintiff to subscribe for shares in and to become one of a syndicate of persons to purchase certain real estate situated in the county of Jackson and State of Missouri, called Grafton Place, falsely represented to the plaintiff that the defendant, together with one Voorhees and one Gregory, as copartners, had purchased said Grafton Place for the sum of $62,456, and that they held the real estate by a good and clear title, so that if the plaintiff should purchase an interest in the real estate by becom-

ing one of the syndicate, nothing more would need to be paid by the plaintiff than his share of the taxes assessed on the real estate, and that everything about the real estate was "straight and right," and that the real estate was situated in Kansas City, in said county of Jackson; that in fact none of the copartners had paid said sum in good faith for the real estate, and the same was encumbered by a mortgage for the sum of $38,456, and the real estate was situated near the town of Independence, in said county of Jackson, at a distance of nine miles from Kansas City, all of which the defendant well knew; that the plaintiff, being ignorant of the existence of the mortgage, and of the price really paid by the copartners, or any of them, and of the situation of the real estate, and relying on and believing in the representations of the defendant, was induced by means thereof to pay to the defendant for one share in the syndicate the sum of one thousand dollars; that on June 15, 1888, an assessment of $253.17 upon the share owned by the plaintiff was called for and demanded by the defendant for the purpose of paying the interest and a portion of the principal sum of the mortgages; that to induce the plaintiff to pay the assessment, and with intent to deceive the plaintiff, the defendant falsely represented to the plaintiff that the plaintiff was the only member of the syndicate who had not paid his assessment, and that the payment of the assessment was necessary to preserve the rights and interests of the plaintiff in the real estate from being taken under the mortgages, and that the real estate was situated in Kansas City; that in fact several members of the syndicate had not paid their assessments on their shares, and the real estate was not situated in Kansas City, all of which the defendant well knew; that the plaintiff, being ignorant of the fact whether the assessments had been paid or not by the other members of the syndicate, and also being ignorant of the situation of the real estate, and in order to protect the interests which he had acquired, by means of the misrepresentations of the defendant, from the mortgages, paid to the defendant the assessment of $253.17; and that by reason of the mortgages and the situation of the real estate the plaintiff's interest in the real estate and his share in the syndicate were of no value, and he had wholly lost the sums of $1,000 and $253.17, so paid by him.   Answer,

a general denial. Trial in the Superior Court, before *Corcoran*, J., who directed a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*J. B. Scott & W. A. Gile,* for the plaintiff.

*F. P. Goulding,* for the defendant.

KNOWLTON, J. The only question in this case is whether there was evidence which should have been submitted to the jury in support of the plaintiff's declaration. The plaintiff alleged that the defendant made fraudulent representations to him in selling an interest in certain land described as being in Kansas City. A part of the plaintiff's testimony was as follows: "He [the defendant] spoke about a piece of land in Kansas City, thirty-five acres at eight dollars a front foot, or $63,000, — about $63,000 what it amounted to, and be put into a syndicate; to form a syndicate of a thousand dollars a share. He had sold them all but six, and asked me to take two or three of them, or more, or like of that. . . . He called at my house again, . . . and a third time. . . . I took his word and told him I would take one share then, if everything was all straight and right, and he said it was. Then I says, 'In case you don't sell this land, how high is the taxes?' And he told me not very high. I don't remember. Then I says, 'We won't lose anything but the taxes and interest on our money.'" This conversation was in June. The plaintiff soon afterwards paid one thousand dollars, and took a receipt for it from the defendant. In the following winter a deed of trust was delivered to him by the defendant, which purported to give him one twenty-fourth interest in the real estate, subject to mortgages amounting to $38,456, and which recited an agreement on his part to assume and pay one twenty-fourth part of this mortgage indebtedness. Subsequently an assessment was made for a payment towards the mortgage debt, and the plaintiff, in describing an interview with the defendant in regard to it, testified as follows: "When he came in he spoke to me about sending the money on this assessment, and I told him I did n't propose to send it, because there was a mortgage on it that he did not represent to me at the time he sold it to me. I told him I understood it was all clear, or at least he represented it so to me. He said the property was all right, just as he represented. I told him if it was, to give me back my thousand dollars,

and I would give him the interest on it. He said he would if he had the money, because he considered it all right." In describing a later interview between the plaintiff and the defendant and Voorhees, a partner of the defendant in the real estate transaction, the plaintiff said that he made a statement to Voorhees and the defendant of what the defendant told him when he bought the share. This is his account: " He came to my house and told me that they had bought this land, thirty-five acres, in Kansas City, at $63,000. . . . At eight dollars a front foot, which amounted to $63,000. . . . About $63,000, or sixty-two and some odds. They had bought it at that price, and they said they had cut it up into shares, at a thousand dollars a share; that they had sold all but six, and wanted I should buy one or more of them, or two or three, and I objected. The next time we had a similar conversation, and the third time Mr. Fowler said he had disposed of all but two, and finally I told him I would take one, if everything was all straight and right, and the way he represented it. I asked him about the taxes, in case we did n't sell the land that year. Mr. Fowler told me, but I don't remember. It was n't very high. Then I said, 'In case you do not sell it, we would have nothing to lose only the interest on our money and the taxes, which would n't be much.' I said to Mr. Voorhees at the time that was where the trouble was between Fowler and myself, because he did not explain the thing and tell me about the mortgage at the time he sold it to me. Mr. Voorhees said to Fowler, Did n't you show Powers a copy or certificate of title of the plan of that lot? . . . Mr. Fowler said, No, he did n't think it would make any difference between him and Powers. I said, that was where all the trouble comes. If you had shown me that, you know I would never have let you had a dollar."

It was proved that the real estate was about thirty-five acres of land, situated, not in Kansas City, but in Independence, nine miles from there; that it was bought for $35,000 by the firm of Voorhees, Gregory, and Fowler, of which the defendant was a member, and the title was taken by Gregory, who gave $1,000 in cash and mortgages to cover the remaining $34,000. A few days later the title was transferred through a third person from Gregory to Voorhees, another member of the firm, for a consideration stated in the deed to be $62,456, Voorhees having pre-

viously taken a mortgage on the property such as to make the mortgage indebtedness appear of record to be $38,456. The firm raised money from the sale of certificates of trust issued by Voorhees, and with it paid off a small part of the mortgage indebtedness, and divided the balance of the proceeds among them. None of them ever put any money into the property except the $1,000 which was paid at the time of the purchase, and afterwards reimbursed from the proceeds of the sale of certificates of trust. The testimony of experts in real estate tended to show that the real value of the property at the time was from $17,500 to $20,000, and that it is now worth not more than $9,000.

We are of opinion that the plaintiff was entitled to go to the jury on the question whether the fair import of the defendant's statements was not that the property, amounting in value to about $63,000, had been bought and paid for, and was to be divided into sixty-three shares of $1,000 each, so that each holder of a share would own one sixty-third part of the property, free from any mortgage encumbrance. If that had been true, the purchaser of a share would have had a very different interest from one who took one twenty-fourth of the property while it was mortgaged for much more than it was worth, and who at the same time agreed to assume his proportional part of the mortgage indebtedness. The defendant contends that there is no allegation in the declaration under which a recovery for such a fraudulent representation can be had; but we are of opinion that the fifth count is sufficient for this purpose.

We are also of opinion that the representation that the land was in Kansas City, when in fact it was in a small city nine miles from there, was material. The plaintiff testified that the former place was represented to have from 170,000 to 180,000 inhabitants; and in a purchase of land with a view to sell it as a speculation, its location in a populous neighborhood is ordinarily regarded as enhancing its value. No evidence was offered to show particularly the amount of damages, but we are of opinion that there was enough to entitle the plaintiff to go to the jury.

*Exceptions sustained.*